<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
)
UNITED STATES OF AMERICA,   )
)
          Plaintiff,   )
)     Crim. Action No. 08-629 (GEB)
      v.   )
)     **MEMORANDUM OPINION**
ROBERT SACKS, et. al.,   )
)
          Defendants.   )
—————————————————————)

<u>BROWN, Chief Judge</u>

This matter comes before the Court upon the Government's motion in limine (Docket Entry No. 143) to preclude the expert reports of Dr. Larry Pollock, Dr. A. David Axelrad, and Dr. Henry I. Spitz. The Court has reviewed the parties' submissions and the expert reports and heard oral argument on October 29, 2009, and for the reasons set forth below and stated on the record on November 12, 2009, the Court will grant in part and deny in part the Government's motion.

## I.    BACKGROUND

On September 10, 2008, the United States filed a sealed indictment, charging the defendant Robert Sacks ("Defendant") among other co-defendants with conspiracy to commit mail fraud, wire fraud, mail fraud, conspiracy to commit bank fraud, and aggravated identity theft. (Docket Entry No. 1.) A superceding indictment was filed on October 8, 2009, charging Defendant with: (1) conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §1349 ("Count One"); (2) wire fraud, in

violation of 18 U.S.C. §1343 and 18 U.S.C. § 2 ("Counts Two through Nineteen"); (3) mail fraud, in violation of 18 U.S.C. §1341 and 18 U.S.C. §2 ("Counts Twenty through Twenty-Three"); (4) conspiracy to commit bank fraud, in violation of 18 U.S.C. §1344 and 18 U.S.C. §1349 ("Count Twenty-Four"); and (5) aggravated identity theft, in violation of 18 U.S.C. §1028A(a)(1) and 18 U.S.C. §2 ("Counts Twenty Five through Forty-Two"). (Docket Entry No. 125.) In short, the Government alleges that Defendant participated in a fraudulent telemarketing business "to defraud and attempt to defraud . . . financial institutions and . . . their account holders out of tens of millions of dollars by debiting or attempting to debit tens of thousands of bank accounts throughout the United States without the knowledge, authorization or permission of the account holders." (Superceding Indictment ¶1.)

On October 16, 2009, the Court granted Defendant's application to add additional counsel, George J. Parnum, Esq., who Defendant stated would be an addition to his defense team and that his current defense attorney, Edward V. Sapone, Esq., would remain his attorney, as well. Mr. Parnum sought a continuance of the trial date of November 10, 2009, in order for Defendant to be evaluated by psychological experts. The Court balanced the respective arguments raised by the parties in favor of and against the request for a continuance, granted the request, and set the new trial date for December 1, 2009(Docket Entry No. 134.) Jury selection was later set for November 30, 2009. The trial now is scheduled to begin January 4, 2010, and no further adjournments are anticipated.

The Government brings this motion in limine pursuant to United States v. Pohlot, 827 F.2d 889 (3d Cir. 1987), cert. denied, 484 U.S. 1011 (1988), asking for the Court's determination regarding the admissibility of Defendants' three offered expert reports.

II.    **DISCUSSION**

A.    **The _Pohlot_ Standard**

"District Courts have broad discretion to exclude expert testimony that is not offered as part of an insanity defense or to negate the mens rea element of a crime." United States v. Baxt, 74 F. Supp. 2d 436, 441 (D.N.J. 1999), aff'd, 265 F.3d 1057 (3d Cir. 2001) (citing United States v. Bennett, 161 F.3d 171, 182 (3d Cir. 1998); United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993); United States v. Erskine, 588 F.2d 721, 722 (9th Cir. 1978)). Further, "[t]he burden that must be met for expert psychiatric testimony to be admitted is a substantial one" that "falls squarely on the defendant." Baxt, 74 F. Supp. 2d at 441.

Expert psychological testimony can be admitted to negate the mens rea element of an offense in limited circumstances. In United States v. Pohlot, the Third Circuit determined that evidence of a mental disease or defect is not prohibited by the Insanity Defense Reform Act of 1984 ("IDRA") if it serves to negate the mens rea element of a criminal statute. Pohlot, 827 F.2d at 897. However, the court warned that "the strict use of psychiatric evidence to negate mens rea may easily slide into wider usage that opens up the jury to theories of defense more akin to justification." Id. at 905. In light of this "strong danger of misuse" district courts "should admit evidence of mental abnormality on the issue of mens rea only when, if believed, it would support a legally acceptable theory of mens rea." 827 F.2d at 905-06. The Third Circuit distinguished between admissible evidence that truly negates mens rea and inadmissible evidence going toward "diminished capacity" and "diminished responsibility," which are defenses of justification or excuse. Id. at 905. Pohlot made clear that the district courts are required to "carefully scrutinize psychiatric defense theories bearing on mens rea" because "[p]resenting defense theories or psychiatric testimony to juries that do not truly negate

mens rea may cause confusion about what the law requires." Id. at 890.  Courts should perform this evaluation "outside the presence of the jury."  Id. at 906.  The Pohlot court also stated:

> "Criminal responsibility must be judged at the level of the conscious.  If a person thinks, plans and executes the plan at that level, the criminality of his act cannot be denied, wholly or partially, because, although he did not realize it, his conscious was influenced to think, to plan and to execute the plan by unconscious influences which were the product of his genes and his lifelong environment."

Pohlot, 827 F.2d at 906 (quoting State v. Sikora, 44 N.J. 453 (1965)).

"There is an important distinction between 'evidence that a defendant lacks the capacity to form mens rea and evidence that the defendant actually lacked mens rea at the time of the offense,'" and therefore, "the court must focus 'on the proffered link or relationship between psychiatric evidence offered and the mens rea at issue in the case.'" United States v. Richards, 9 F. Supp. 2d 455, 458 (D.N.J. 1998), aff'd, 262 F.3d 405 (3d Cir. 2001).  In Richards, the district court determined that the expert testimony was inadmissible because the expert proffered that the defendant was depressed and "failed to establish the requisite link between the specific psychiatric evidence and the lack of mens rea." Id. at 459 (addressing the proffered expert testimony with respect to the specific intent element of the crime charged and finding that "[i]t [was] not pertinent whether he actually knew that he was committing a crime" because "[i]gnorance of the law is no excuse").  "Expert psychiatric testimony concerning 'unconscious motivation,' 'impaired volitional control,' or an 'inability to reflect on the ultimate consequences of one's conduct' is inadmissible." United States v. Baxt, 74 F. Supp. 2d at 440 (citation omitted).  Likewise, "[c]onclusory statements by a defendant about the link between psychiatric evidence and the defendant's mens rea at the time the alleged crime was committed do not render evidence admissible." Id. (citation omitted).  "[N]o amount of honest belief that the enterprise should ultimately make money can justify baseless, false

or reckless misrepresentations or promises." United States v. Mezvinsky, 206 F. Supp. 2d 661, 667 (E.D. Pa. 2002).

In contrast, United States v. Mister, 553 F. Supp. 2d 377 (D.N.J. 2008), held that expert testimony regarding the defendant's low intellectual functioning was admissible under Pohlot, but that evidence regarding the defendant's "suggestibility" was not admissible.  The court in Mister cited the Third Circuit's decision in United States v. Hayden, 64 F.3d 126 (3d Cir. 1995) for the proposition that "[e]vidence of low intelligence and reading ability is generally relevant in determining knowledge and is usually a jury question." Mister, 553 F. Supp. 2d at 387 (citation omitted).  Judge Simandle, writing in Mister, distinguished this Court's prior decision in United States v. Montgomery, 207 U.S. Dist. LEXIS 72614 (D.N.J. Sept. 28, 2007), which the Government has relied upon, stating that, "the expert will not opine at all on whether or why Defendant engaged in certain conduct, but will only explain to the jury Defendant's impaired intellectual functioning." Mister, 553 F. Supp. 2d at 387.  The defendant in Mister also sought to offer evidence that the "[d]efendant acts to please others and will change his behavior easily under pressure from others, regardless of what he knows." Id. at 388.  The court concluded that "whether [the d]efendant is suggestible is not relevant to whether he knew the purpose of the conspiracy or of the payments and therefore the psychological evidence of suggestibility is inadmissible under Pohlot, Baxt, Richards, and Montgomery." Id.

B.    The Parties' Arguments

Defendant, in support of his argument that the expert testimony is admissible, states that the central point to be tried in the case is whether Defendant had the requisite knowledge and intent to

deceive while participating in the scheme alleged.  (Def.'s Br. at 2.)  Defendant argues that Dr. Pollock's, Dr. Axelrad's, and Dr. Spitz's diagnoses and evaluations of Defendant should be deemed admissible under <u>Pohlot</u> because "[t]he findings and diagnoses . . . will assist a jury in understanding the cognitively crippling characteristics of the mental condition that [Defendant] possessed throughout his childhood and into adulthood" and will "shed light on [Defendant's] cognitive abilities, which bear directly on the issue of knowledge and intent."  (Def.'s Br. at 16.)  Defendant relies heavily on the district court's holding in <u>Mister</u> in support of its arguments. Defendant also attached supplemental reports to his brief from Drs. Pollock and Axelrad.

The Government, in its response letter, argues that the Court should not rely on <u>United States v. Hayden</u>, 64 F.3d 126 (3d Cir. 1995), because an assessment of the expert testimony under <u>Pohlot</u> was not at issue.  (Gov't Reply Letter at 4.)  The Government also argues that the supplemental reports from Drs. Pollock and Axelrad that Defendant supplied with his brief are conclusory and should be viewed as "nothing but a generalized mental incapacity defense that has been squarely rejected by the courts."  (<u>Id.</u> at 2.)

The Government argues in its motion papers that the Court should exclude the reports and testimony of the three experts at issue because each report fails to meet the standards set forth in <u>Pohlot</u> and its progeny.  (Gov't Br. at 1.)  It maintains that the experts "proffer only a generalized mental incapacity/diminished capacity defense that either bears no relationship to the intent elements of the charged crimes or is patently inconsistent with Defendant's own sworn testimony."  (<u>Id.</u>)  The Government argues that the Defendant's experts have not "tied or linked hypomanic bi-polar disorder, forceps trauma or borderline IQ to an individuals capacity to deceive" and have also failed to specifically link these conditions to Defendant or to Defendant's state of mind "at the time the

offense was committed – as is required by law (and mandated by their burden)."  (Id. at 15-16.)  The Government avers that "there is absolutely no reason in this case to conduct that inquiry [into whether Defendant had the genuine incapacity to comprehend the goals and objectives of the scheme] because Defendant Sacks already has conceded, under oath, that he has the capacity to understand the concept of an unauthorized account withdrawal" and that this point "was the sole issue before this Court during the bail revocation hearing that occurred on October 2, 2009."  (Id. at 18.)

In its letter brief in response, Defendant argues that "[t]he Government . . . mischaracterizes the issue before the Court," which is "whether Mr. Sacks had knowledge of the asserted conspiracy and fraudulent scheme."  (Def.'s Reply Letter at 1.)  Defendant reiterates its reliance on United States v. Hayden, 64 F.3d 126 (3d Cir. 1995) in support of its arguments that evidence of borderline intelligence is admissible and relevant to the jury's evaluation of a defendant's mens rea.  (Id. at 2.) Defendant maintains that "[n]o expert will testify that Mr. Sacks was unaware of the transactions that occurred," and no expert with testify that Defendant "did not understand the concept of fraud, or that withdrawing money of others without their permission is wrong."  (Id.)  Defendant avers that the defense experts "thoroughly and holistically described their evaluation" and that "the Government's objections appear to be arguments addressed to weight rather than admissibility."  (Id. at 4.)

### C.    Analysis

#### 1.    The Pertinent Mens Rea

Defendant has been charged with conspiracy to commit mail and wire fraud, wire fraud, mail fraud, conspiracy to commit bank fraud, and aggravated identity theft.  The fraud offenses require

that the Government, at trial, prove beyond a reasonable doubt that Defendant had the "intent to defraud," which means "to act knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another." Mezvinsky, 206 F. Supp. 2d at 667-68 (recognizing that the defendant's "mens rea defense, therefore, must be probative as to whether he had the mental capacity to form such an intention over the . . . course of his alleged . . . schemes to defraud") (citations omitted). Further, for the charges alleging conspiracy, the government must prove beyond a reasonable doubt: (1) Defendant "knew of the objectives or goals of the conspiracy;" (2) Defendant "joined the conspiracy intending to help further or achieve . . . those goals or objectives;" and (3) Defendant "and at least one other alleged conspirator shared a unity of purpose toward those objectives or goals." (Gov't Br. at 17); see also United States v. Inigo, 925 F.2d 641, 652 (3d Cir. 1991)(citing United States v. Terselich, 885 F.2d 1094, 1097 (3d Cir. 1989)). Finally, with respect to the charges alleging aggravated identity theft, the Government must prove beyond a reasonable doubt that Defendant acted knowingly. See 18 U.S.C. § 1028(A); Flores-Figueroa v. United States, 129 S. Ct. 1886, 1890-91 (2009).

Therefore, the two elements of mens rea for these charges that the Court must consider are the "specific intent to deceive" and that Defendant acted "knowingly." Regarding the specific intent to deceive, "a defendant must do more than knowingly act;" he "must also act with the purpose of violating the law." United States v. Kimes, 246 F.3d 800, 806-07 (6th Cir. 2001) (citations and internal quotes omitted). With respect to the mens rea of "knowingly", the Third Circuit defined "knowingly" as "[a]n act . . . done voluntarily and purposely and not by accident or mistake." United States v. Montgomery, No. 08-1077, 2009 U.S. Dist. LEXIS 15725, at *10 (3d Cir. July 15, 2009) (citing to the record and addressing the jury instruction required for obstruction).

8

2.    **The Proffered Testimony**

Defendant maintains that Dr. Axelrad's assessment of Defendant should be deemed admissible. Dr. Axelrad's diagnosis and evaluation of Defendant is based on Dr. Axelrad's forensic psychiatric consultation of Defendant and information learned about Defendant from other people, and the administration, results, and analysis of the following: (1) a structured clinical interview for DSM-IV Axis I Psychiatric Disorders (SCID-I); (2) a structured clinical interview fo DSM-IV Axis II Personality Disorders (SCID-II); and (3) Dr. Pollock's report and findings. (Axelrad's Report at 2.) Dr. Axelrad also reported that he interviewed Defendant's assistant Ginger Hetrich, and that he received information from Defendant's mother and attorney about Defendant. (Id. at 11.) Dr. Axelrad concluded that Defendant "demonstrated significant evidence of affective dysfunction during the course of the clinical psychiatric interviews," that his "affective behavior was disordered," and that he displayed "hypomanic behavior." (Id. at 22-23.) Dr. Axelrad also reported that Defendant "appear[s] to have significant problems associated with his cognitive functioning." (Id. at 23.) Dr. Axelrad reiterated Dr. Pollock's findings and conclusions as part of his report. (Id. at 26.) Dr. Axelrad concluded that "Defendant does meet the diagnostic criteria for a Bipolar I Disorder" and has Dementia due to head trauma. (Id. at 26-27.) Dr. Axelrad notes that his diagnosis of dementia due to head trauma is based upon Defendant's mother's statement that he was delivered with forceps when he was born and had bruising on his head as a result. (Id. at 28.) Further, Dr. Axelrad states that these conditions, Bipolar I Disorder and Dementia due to head trauma, "did substantially impair [Defendant's] cognitive behavior and judgment on or around the time of his involvement in the telemarketing activities," that he "would have grave difficulty in understanding the nature of the actions involved in the various complaints," and that "Defendant would have been

9

unable to fully grasp the criminal nature of the activities perpetrated in the alleged offense" and "would have been significantly further disrupted by the dysfunction associated with his Bipolar I Disorder." (Id. at 29.)

Defendant argues that Dr. Pollock's diagnosis and evaluation of Defendant, which relies on the administration, results, and analysis of the Wechsler Adult Intelligence Scale - Fourth Edition ("WAIS-IV"), the Wide Range Achievement Test - Fourth Edition ("WRAT4"), the Minnesota Multiphasic Personality Inventory ("MMPI-2"), the Beck Depression Inventory ("BDI"), the Beck Anxiety Inventory ("BAI"), the Conners' Continuous Performance Test II ("CPT II V.5"), and the Project ReEntry Neuropsychological Battery II, including an Auditory/Language, Visual/Spatial, Tactile/Perception, Motor Function, Memory, and Executive Functions Assessments, should be deemed admissible. (Pollock's Report at 1.) Dr. Pollock concludes that Defendant's "intellectual abilities are in the Borderline range of intelligence and his academic functioning ranged from mildly deficient to low average." (Id. at 8.) Dr. Pollock states that Defendant is depressed and anxious due to the instant proceedings. (Id.) He also concluded that the "neuropsychological evaluation revealed significant neurocognitive impairments" and that Defendant's "long-standing mental disorder that is characterized by an elevated mood, high energy, impulsivity, and grandiose thinking" . . . overwhelm his judgment." (Id. at 9.) Dr. Pollock summarized his conclusions, stating:

> Mr. Sacks has Borderline Intellectual Functioning and poor academic skills. He has problems with language, visual skills, memory and executive functioning. He is impulsive and impressionable and is easily taken advantage of. He reported that he had been "scammed" many times. He has poor judgment and poor insight and often gets into deals that do not turn out well. He has been unable to learn from his mistakes. He craves attention and excitement and is easily bored.

(Id.)

10

Finally, Defendant argues that Dr. Spitz's report is admissible. It lists "numerous instances of financial dealings in which [Defendant] has lost money or feels he has been exploited in some way." (Spitz's Report at 1.) He reports that Defendant has "a history of Attention Deficit Disorder that dates back to early childhood," that "he has a mood disorder best diagnosed as Bipolar Disorder," and that his symptoms of that disorder "have interfered with his judgment, his ability to understand the consequences of his choices and to interfere with his interpersonal relationships." (Id.) According to Dr. Spitz, Defendant has an "excessive need for approval, low self-esteem and social isolation" which makes him try "to please people so they will like him and think well of him." (Id.) Finally, Dr. Spitz observes that Defendant "does not seem to learn from negative experiences." (Id.)

### 3.    Application

Dr. Axelrad's report, on its face, does not meet the standard of admissibility set forth in Pohlot and its progeny. Dr. Axelrad concluded that Defendant suffers from Bipolar I Disorder and Dementia due to head trauma. However, the symptoms of Bipolar Disorder do not negate the mens reas that are at issue in this case. Specifically, Dr. Axelrad opined that "deficiencies in concentration, persistence, and pace would have significant impact upon [Defendant's] ability to exercise good business judgment in developing business associations with others." (Axelrad Report at 32.) Dr. Axelrad's conclusion that Defendant's business judgment is affected is precisely the type of psychological evidence that Pohlot prohibits as it in no way relates to an intent to deceive or one's knowledge of particular events. Further, with respect to the diagnosis of Dementia due to head trauma, Dr. Axelrad's report does not specifically outline the extent of this dementia, and insofar as

11

certain symptoms are described, namely that it has affected his "concentration, persistence, and pace," (Axelrad Report at 32), they also do not negate the mens reas at issue, shed no light on Defendant's intent to deceive, and would fail to affect Defendant's capacity to act voluntarily and purposely and not by accident or mistake.  For these reasons, the entirety of Dr. Axelrad's report fails to meet the standard set forth in Pohlot and its progeny and will be excluded at trial.  In this respect, the Government's motion is granted.

With respect to Dr. Pollock's proffered testimony, to the extent that his testing indicated that Defendant has Borderline Intellectual Functioning, perceptual deficiencies, and an I.Q. of 80, it is admissible.  See United States v. Hayden, 64 F.3d 126 (3d Cir. 1995) (holding that "[e]vidence of low intelligence and reading ability is generally relevant in determining knowledge and is usually a jury question").   In United States v. Mister, Judge Simandle based his decision largely upon the Third Circuit's opinion in Hayden, determining that the expert testimony regarding the defendant's low intellectual functioning was admissible under Pohlot, he noted the holding in Hayden: "[e]vidence of low intelligence and reading ability is generally relevant in determining knowledge and is usually a jury question."  Mister, 553 F. Supp. 2d at 387 (citation omitted).  Therefore, as in Mister, so long as Dr. Pollock does "not opine at all on whether or why Defendant engaged in certain conduct, but . . . only explain[s] to the jury Defendant's impaired intellectual functioning," then the material is admissible.   Mister, 553 F. Supp. 2d at 387.

The Government has not cited any case where this type of evidence for this particular mens rea, "knowledge," has been submitted to a court that subsequently determined it to be inadmissible.  Rather, the Government argues that Hayden does not control because it did not address expert testimony specifically.  In Hayden, the defendant sought to introduce evidence of his low intelligence

and reading levels. 64 F.3d at 128. Hayden had been arrested for trying to buy a gun while he was under indictment by information. Id. at 127-28. Apparently, when the defendant signed a form applying to buy the gun, which asked whether he was "under indictment or information in any court," the defendant answered "no." Id. However, the defendant indeed had previously received an information, charging him with receiving stolen property and with unauthorized use of an automobile a month prior, and he signed his name on the bottom indicating that he understood its contents. Id. at 127. According to a careful reading of the Third Circuit's opinion in Hayden, the defendant attempted to introduce his own testimony and that of his experts about his low intelligence and reading levels, arguing that due to his low intelligence and reading levels, "he did not know he was violating the law." Id. at 128. Ultimately, the Third Circuit held that because "the government must prove Hayden knew or deliberately disregarded the fact that he was under an information and that his purchase of a firearm was unlawful . . . the excluded evidence had a direct bearing on willfulness and was improperly excluded." Id. at 134. "Knowledge" is an element that must be found to find the mens rea "willfulness" in this context, and the Third Circuit expressly considered that element when making its determination.

The Government also states that the general rules set forth in Pohlot and Montgomery control. However, in Pohlot, the mens rea element at issue was the specific intent element of "purposeful" conduct, in the context of the defendant contracting to kill his wife. 827 F.2d at 890. Pohlot's defense was that he had been abused by his wife, and as a result, he had a psychological inability to respond, which in turn led to his attempt to "fight back," a fantasy, and not truly a plan to kill his wife. Id. at 893. The mens rea of "knowledge" was never addressed. Further, in Montgomery, the Third Circuit addressed this Court's exclusion of expert evidence that the

13

defendant had post traumatic stress disorder, an unspecified personality disorder, and was "likely not capable of organized clear thought" due to the post traumatic stress disorder. 2009 U.S. App. LEXIS 15725, at *9. The Third Circuit held that the evidence "does not negate the mens rea for any of the crimes," which were deprivation of civil rights, conspiracy to obstruct justice, and obstruction of justice. Id. at *10.

Although the Government has strenuously argued that Defendant's own testimony contradicts this defense theory, and that at his bail hearing Defendant testified that he did understand the concept of an unauthorized account withdrawal, these are matters for the jury to consider at trial.

On the other hand, Defendant, in his brief, not only cites to Mister and Hayden, but he also draws the Court's attention to matters in other jurisdictions that have addressed this issue and admitted evidence of low intelligence where the relevant mens rea was "knowing." See United States v. Lamarre, 248 F.3d 642 (7th Cir. 2001), cert. denied, 533 U.S. 963 (2001) (where the relevant mens rea was the "specific intent to defraud," the Seventh Circuit reversed the district court's decision to exclude evidence of the defendant's borderline intellectual functioning because it was "scientifically valid social science" pursuant to Daubert); United States v. Rahm, 993 F.2d 1405 (9th Cir. 1993) (holding that expert testimony regarding the defendant's perceptual difficulties and low intelligence where "knowledge" was the mens rea at issue should have been admitted in the district court pursuant to Federal Rule of Evidence 702); United States v. Williams, 2009 U.S. Dist. LEXIS 13472, at *31 (D. Haw. Feb. 2, 2009) (addressing evidence of borderline intellectual functioning and brain damage at a Daubert hearing and holding that whether the defendant's low intelligence "affected his capacity to form the requisite mens rea at the time periods at issue is a question of fact and accordingly lies within the province of the jury").

In addition, the Third Circuit states in its written opinion in <u>Hayden</u> that "[a]ny use of expert testimony on remand must . . . comply with Federal Rule of Evidence 704(b)." 64 F.3d at 134 n.13. Therefore, the Third Circuit contemplated in <u>Hayden</u> that on remand the defendant may seek to admit expert testimony and that it would be subject to a <u>Daubert</u> hearing and other objections based on the Federal Rules of Evidence. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993). Because this Court has yet to make such an inquiry under <u>Daubert</u>, the Court cannot determine whether or not the findings and conclusions of Dr. Pollock in this respect would meet that standard or will ultimately be admissible at trial.

Likewise, to the extent that Dr. Pollock has opined regarding Defendant's characteristics of being "impulsive and impressionable and . . . easily taken advantage of;" that he has been the victim of scams; that he cannot learn from his mistakes; that "[h]e craves attention and excitement and is easily bored;" and that his pattern to seek pleasurable activities "overwhelm his judgment," this proffered testimony does not meet the standard set forth in <u>Pohlot</u> and its progeny. This is precisely the type of evidence that the court in <u>Mister</u> rejected. Therefore, such commentary from Dr. Pollock is inadmissible.

Finally, with respect to Dr. Spitz's proffered testimony, the Court concludes that it is wholly inadmissible under <u>Pohlot</u> and its progeny. Like Dr. Axelrad's report, the findings and conclusions would not negate the mens reas of either an intent to deceive or inform the jury regarding Defendant's knowledge. This is precisely the type of evidence has been expressly rejected by the District Courts in <u>United States v. Baxt</u>, 74 F. Supp. 2d at 440, and <u>United States v. Mezvinsky</u>, 206 F. Supp. 2d at 667. Full of conclusory statements, it seeks to justify Defendant's behavior and describes Defendant's unconscious motivations, impaired volitional control, and his inability to

15

reflect on the ultimate consequences of his conduct, which is impermissible.

**III.    CONCLUSION**

For the foregoing reasons, the Government's motion in limine is granted in part and denied in part.  An appropriate form of order accompanies this opinion.

Dated: November 23, 2009

                                    <u>  s/ Garrett E. Brown, Jr.      </u>
                                      GARRETT E. BROWN, JR., U.S.D.J.